IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TURNER CONSTRUCTION                      :
  COMPANY, INC.                        :

    v.                               : Civil Action No. DKC 2006-2070

                       :

RICHARDSON ELECTRICAL                    :
  COMPANY, INC.                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution are (1) Plaintiff Turner Construction Company's motion to vacate the arbitration award, (2) Defendant Richardson Electrical Company's cross-motion to confirm the arbitration award, and (3) Defendant's motion for sanctions under Rule 11.  Some of the issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, the court will deny Turner's motion to vacate the arbitration award and grant Richardson's motion to confirm the arbitration award.  The motion for Rule 11 sanctions will be denied.

**I. Background**

In 1997, Plaintiff Turner Construction Company was awarded a contract ("prime contract") by the United States Department of Veterans Affairs ("the government") to build an expansion to its medical center in Boston, Massachusetts ("the Project").  In December, 1997, Turner awarded a subcontract to Defendant Richardson Electrical Company to perform the electrical work for the Project.

In the fall of 1998, a dispute arose between Richardson and the government over whether the prime contract required the installation of mineral-insulated electrical cable ("MI cable") in certain areas of the Project. Richardson protested the directive to install the MI cable because it required significant additional time and expense and Richardson did not believe it was required by the prime contract.

Ultimately, Richardson installed the MI cable in the summer of 1999. On September 23, 1999, Richardson submitted a claim to Turner under the Contract Disputes Act (CDA) for additional monetary compensation and a 33 day extension to complete the work ("CDA claim"). The CDA claim sought additional costs arising from the MI cable installation totaling $321,424. The costs may be broken down as follows: (1) direct costs of $281,274, covering material, elevator costs, labor, labor burden, overhead, and profit; and (2) production impact costs of $40,150, arising from the need to work at night and on weekends due to the shortage of available labor skilled in the installation of MI cable. (Paper 8, Ex. 2). In accordance with the prime contract, Turner certified Richardson's CDA claim and submitted it to the government along with its own claim for extra fees due to the contract changes arising from the use of MI cable. (Paper 8, Ex. 2 at 23). The government denied any additional liability for the work involving MI cable.

After the Project was completed, and as a number of pending disputes involving Turner, Richardson, and the government were being resolved, Turner and Richardson agreed to allow Richardson to assert a "pass through claim" in the United States Court of Federal Claims, that is, to sue the government in Turner's name. Richardson wanted to sue in Turner's name because it lacked privity of contract with the government. The pass through claim sought $321,424 in damages. *Turner Construction Co. v. United States*, 54 Fed.Cl. 388, 389 (2002). The court stated in a footnote that "[p]ursuant to the Contract Disputes Act, Turner certified the pass-through claim to the VA on or about November 1, 1999, which was denied by the VA on March 20, 2000. This action followed." *Id*. at 389 n. 1. The Court of Federal Claims ruled in favor of the government, *id*. at 400, and Richardson appealed that decision.

In 2004, the United States Court of Appeals for the Federal Circuit reversed the decision of the Court of Federal Claims and held that Richardson (suing under Turner's name) was entitled to recover the additional costs incurred by installing the MI cable. *Turner Construction Co. v. United States*, 367 F.3d 1319 (Fed. Cir. 2004). The court held that "Turner is entitled to recover the additional costs incurred. We remand for determination of quantum." *Id.* at 1324.

After the case was remanded, Richardson approached the government to discuss settlement of the claim. The government

informed Richardson that several of Turner's contracts were currently under investigation for fraudulent bond practices, including the prime contract.  The government stated that rather than pursue settlement in Richardson's case, it was considering filing a counterclaim for fraud, which it could do because Richardson was suing under Turner's name.  A successful counterclaim for fraud would effectively result in the forfeiture of Richardson's right of recovery in the lawsuit even though it was innocent of any fraud.

On June 24, 2004, Richardson faxed its certified claim to Turner, totaling $489,503.  (Paper 8, Ex. 2 at 1).  The certified claim included the $321,424 originally submitted in the pass-through claim, plus costs associated with the 33-day time extension ($69,300) and CDA interest through June 30, 2004 ($98,779).  (*Id.*)

On July 29, 2004, Turner and Richardson entered into a formal agreement to resolve Richardson's MI cable claim in light of the ongoing fraud investigation ("July 29 agreement").  Turner and Richardson agreed voluntarily to stay the case pending in the Court of Federal Claims until the fraud investigation was resolved.  In consideration for the voluntary stay, Turner agreed to advance to Richardson a portion of the additional compensation Turner was pursuing in its court case.  The July 29 agreement provided, in pertinent part:

> . . .   W H E R E A S ,  t h e  S u b c o n t r a c t o r [Richardson] represents that the Combined

4

Claim exceeds $500,000, and that the *Subcontractor's Extra Work Claim has a value of approximately $500,000, inclusive of interest and other recoverable costs*, and that Subcontractor believes that it will recover such sums at the conclusion of the Federal Claims Court Action;

        \* \* \*

NOW, THEREFORE, the Contractor [Turner] and Subcontractor agree as follows:

        \* \* \*

2.  On or before July 29, 2004, Contractor shall advance to Subcontractor the sum of $250,000 in part *[text illegible]* Subcontractor's Extra Work Claim.

3.  On or before December 31, 2004, Contractor shall advance to Subcontractor the an [sic] additional sum representing the remaining value of the Subcontractor's Extra Work Claim, inclusive of interest and other recoverable costs (the "Additional Advance"). The amount of the Additional Advance shall be determined by agreement between Contractor and Subcontractor to be finalized on or before September 30, 2004.

4.  In the event the Contractor and the Subcontractor cannot agree upon the amount of the Additional Advance, either party may request *binding arbitration* by a member of the firm of Rubino & McGeehin. In the event of such request, a member of Rubino & McGeehin, to be designated by such firm, shall serve as a neutral and independent arbitrator for the purpose of determining the remaining value of the Subcontractor's Extra Work Claim to be advanced by Contractor to Subcontractor. *The decision of Rubino & McGeehan* [sic] *shall be final and conclusive as to the amount to be advanced by Contractor and shall not be subject to appeal*, it being understood that the ultimate value of the Subcontractor's Extra Work Claim will be determined in the Federal Claims Court Action.

        \* \* \*

8.  This Agreement contains the entire understanding by and among the Contractor and Subcontractor relating to the subject matter of this Agreement . . . .

5

(Paper 3, Ex. 4 at 3) (emphasis added).

In June 2005, Turner and the government settled the fraud investigation. Pursuant to the settlement, Turner agreed to forfeit all pending claims related to the Project, including Richardson's claim for additional compensation. (Paper 8, Ex. 5). Thus, the Court of Federal Claims dismissed Richardson's case without determining quantum.

Subsequent to Turner's settlement with the government, Richardson demanded arbitration because, although "[m]ost of the direct costs associated with Richardson's claim ha[d] been paid" by Turner, "the parties ha[d] reached an impasse concerning entitlement to additional amounts for delay and overtime." (Paper 8, Ex. 6 at 1). Although the July 29 agreement specified Rubino & McGeehin as the chosen arbitrator, the firm recused itself due to a conflict. In May 2006, the parties commenced arbitration with Robert Rodgers ("the Arbitrator").

The Arbitrator conducted a full-day hearing, in which he accepted evidence and testimony from the parties, who were both represented by counsel. Both parties made post-hearing submissions of documents and legal arguments. Richardson sought additional compensation of approximately $140,000; on July 10, 2006, the Arbitrator rendered a decision ordering Turner to pay Richardson $110,341.99, within 30 days. Turner timely filed the instant motion to vacate the arbitration award.

Turner challenges the arbitration award on three grounds: Count I, the Arbitrator exceeded his authority in considering Richardson's delay claim; Count II, the Arbitrator displayed a manifest disregard of the law in awarding delay damages and related interest; and Count III, the Arbitrator failed to admit pertinent evidence. (Paper 1 at 8-10). Turner requests that the court vacate the award in its entirety and order a new hearing, or in the alternative, vacate the portion of the award related to delay damages and interest.

Richardson moves to confirm the arbitration award and also requests that the court award it pre-judgment interest from the date of the award and order Turner to pay reasonable costs and fees. Richardson separately moves the court to impose Rule 11 sanctions on Turner and its attorneys for bringing a frivolous lawsuit.

## II.  Standard of Review

> Review of an arbitrator's award is severely circumscribed. Indeed, the scope of review of an arbitrator's valuation decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation.

*Apex Plumbing Supply v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998) (footnote omitted). If there is a valid contract between the parties providing for arbitration, and if the dispute

resolved in the arbitration was within the scope of the arbitration clause, then substantive review is limited to those grounds set out in § 10 of the Federal Arbitration Act (FAA), 9 U.S.C. § 10(a). That section allows an award to be vacated (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or misconduct on the part of the arbitrator; or (3) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.  9 U.S.C. § 10(a).  In addition, a court may overturn a legal interpretation of an arbitration panel if "it is in manifest disregard for the law." *See, e.g. Apex Plumbing*, 142 F.3d at 193 ("Federal courts may vacate an arbitration award only upon a showing of one of the grounds listed in the [FAA], or if the arbitrator acted in manifest disregard of the law"); *Upshur Coals Corp. v. United Mine Workers of America*, 933 F.2d 225, 229 (4th Cir. 1991).  Mere misinterpretation of a contract or an error of law does not suffice to overturn an award.  *See Upshur*, 933 F.2d at 229.  The burden is on the party challenging an award to prove the existence of one of the grounds for vacating the award.  Because an arbitration award is entitled to a presumption of correctness, the burden upon the challenger is a heavy one.  *Owen-Williams v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 907 F.Supp. 134, 137 (D.Md. 1995).

## III.  Analysis

### A.  Arbitrator Exceeded His Authority (count I)

This court's review of arbitration awards is extremely circumscribed.  Unless the party challenging the award establishes the existence of one of the limited grounds outlined above, this court is powerless to intervene.  The standard is even more limited than a review for an abuse of discretion.  Understanding this limitation, Turner argues that the arbitrator exceeded his authority.  A court can modify an arbitrator's decision on this basis only if the arbitrator exceeds the powers delegated to him by the parties.  *See Eljer Mfg., Inc. v. Kowin Dev. Corp.,* 14 F.3d 1250, 1255-56 (7th Cir. 1994).

Turner argues that "[b]y its own terms, the agreement to arbitrate was limited to the Contract Dispute Act pass-through claim previously submitted by Richardson and residing before the Court of Federal Claims[,]" citing paragraphs 4 and 6 of the July 29 agreement.  Turner appears to want to limit the scope of arbitration to the original claim for $321,424, arguing that Richardson raised its claim for delays for the first time before the Arbitrator.  (Paper 1, ¶ 17).  This argument is disingenuous as Richardson raised the delay claims from the outset.  The original claim sought a 33 day extension to complete the work.  The amount of the delay claim was quantified at least as early as 2004 when Richardson faxed its certified claim to Turner.  The certified

claim submitted by Richardson differed from the original pass through claim in that it also requested compensation for the 33 day delay and CDA interest (paper 8, ex. 2), the very claims that Turner now challenges.  Indeed, the July 29 agreement, to which Turner cites, specifically states that the Subcontractor's Extra Work Claim is valued at approximately $500,000 and that the "amount of the Additional Advance" may be the subject of arbitration where "Additional Advance" is defined within the contract as the "sum representing the remaining value of the Subcontractor's Extra Work Claim, inclusive of interest and other recoverable costs." (Paper 1, Ex. 1 at 2-3).  Both the valuation of the claim at $500,000, a sum noticeably higher than the original pass through claim ($321,424), and the clause "inclusive of interest and other recoverable costs" demonstrate that the July 29 agreement was intended to cover Richardson's delay claims.

The Arbitrator did not exceed the scope of his authority in considering Richardson's delay claim as it was specifically contemplated by the July 29 agreement, which defined the Arbitrator's role.

**B. Manifest Disregard of Law (count II)**

Turner argues in the alternative that even if the delay claim was within the scope of arbitration, it must be rejected for failing to state a sum certain pursuant to the Contract Disputes Act.  Turner argues that although the Arbitrator specifically

recognized the deficiency of Richardson's claim for failing to state a sum certain, he nevertheless awarded delay damages, thereby displaying a manifest disregard for the law.

To vacate an arbitration award based on an arbitrator's manifest disregard of the law, the court must find "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 28 (2nd Cir. 2000) (citation omitted). The court's review for manifest disregard is "severely limited." *Id.*

In support of its position, Turner cites to *CPS Mechanical Contractors, Inc. v. United States,* 59 Fed.Cl. 760 (2004), which states that the requirement for stating a sum certain under the Contract Disputes Act "is satisfied if the contractor sets out the specific amount it is seeking or if the amount in dispute can be easily determined by a simple mathematical calculation or from the contractor's submission to the CO." *Id.* at 764. Turner fails, however, to show why this standard would apply in the arbitration at issue.

The Arbitrator recognized that under the standard applicable in the Court of Federal Claims, Richardson failed to specify a sum certain for its delay damages. (Paper 3, Ex. 1 at 8). The Arbitrator also observed, however, that nothing in the record

specified the rules of evidence applicable to the Turner-Richardson arbitration. (*Id.*) The Arbitrator thus applied rules of evidence less stringent than the federal rules, as is customary in arbitrations. In reviewing arbitration awards, a district court may vacate an award if the law purportedly ignored by the arbitrator is "well defined, explicit, and clearly applicable to the case." *Greenberg,* 220 F.3d at 28. Turner does not point to, and this court has not found, any precedent explicitly stating that in an arbitration, delay damages may be awarded only if the claim meets CDA requirements, absent a contract provision providing that the federal rules of evidence apply in that arbitration. Thus, the Arbitrator did not display a manifest disregard for the law in refusing to dismiss Richardson's claim for failure to state a sum certain.

## C. Failure to Admit Pertinent Evidence (count III)

During the arbitration hearing, Richardson offered previously undisclosed evidence of overtime costs incurred as a result of MI cable work. At the hearing, Turner objected to the evidence because it had not been previously supplied. Accordingly, the Arbitrator granted Turner 14 days to examine copies of the exhibits for the purpose of identifying any perceived duplication with other claims and to file a written response.

Turner asserts that it presented evidence to the Arbitrator that the cost records failed to show whether the overtime costs

were attributable to the MI cable installation or other changed work. The Arbitrator refused to consider the evidence, explaining that "[t]he question of which portions of the overtime were caused by the MI cable issue and which were not is an issue that was not raised at the hearings and therefore is technically not within the scope of the two week review of the job cost report." (Paper 3, Ex. 1 at 6). Turner points out that until it "had an opportunity to review the records, which were produced by Richardson for the first time at the hearing, it could not have been aware of the deficiency in the proof offered by Richardson." (Paper 1 at 6). Richardson states in its response to Turner's motion to vacate that Turner mischaracterizes the history of the case and that, in fact, the "evidence" it supplied to the Arbitrator was nothing more than unsubstantiated legal conclusions. (Paper 3 at 16).

"Under federal law, misconduct apart from corruption, fraud or partiality in the arbitrators justifies reversal only if it so prejudices the rights of a party that it denied the party a fundamentally fair hearing." *Zandford v. Prudential-Bache Sec., Inc.,* 1994 WL 150918, *3 (D.Md. 1994) (citing *Apex Fountain Sales, Inc. v. Kleinfeld*, 818 F.2d 1089, 1094 (3rd Cir. 1987)(citations omitted)). *See also Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985) ("Vacatur is appropriate only when the exclusion of evidence

so affects the rights of a party that it may be said that he was deprived of a fair hearing.") (citation omitted).

> An arbitrator enjoys wide latitude in conducting an arbitration hearing. Arbitration proceedings are not constrained by formal rules of procedure or evidence; the arbitrator's role is to resolve disputes, based on his consideration of all relevant evidence, once the parties to the dispute have had a full opportunity to present their cases . . . . The arbitrator is the judge of the admissibility and relevancy of evidence submitted in an arbitration proceeding. The arbitrator is not bound to hear all of the evidence tendered by the parties; however, he must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments.

*Id.* at 38-39 (citations omitted).   While 9 U.S.C. § 10(a)(3) permits a federal court to vacate an arbitration award if "arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy[,]"

> the statute cannot be read . . . to intend that every failure to receive relevant evidence constitutes misconduct which will require the vacation of an arbitrator's award . . . . In an arbitration case a court cannot act as a legal screen to comb the record for technical errors in the receipt or rejection of evidence by arbitrators, who in most cases are laymen.  A fair accommodation between the words of the statute and the characteristic nature of arbitration would require that such an error must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing.

*Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3rd Cir. 1968) (footnote omitted).   "Absent

exceptional circumstances, . . . a reviewing court may not overturn an arbitration award based on the arbitrator's determination of the relevancy or persuasiveness of the evidence submitted by the parties." *Hoteles Condado Beach*, 763 F.2d at 39-40 (citations omitted).  Turner has not shown exceptional circumstances that would justify a vacatur of the award based on the Arbitrator's refusal to admit Turner's evidence that the cost records failed to differentiate whether the overtime costs were attributable to the MI cable installation or other changed work.

## IV. Motion for Rule 11 Sanctions

> Under Rule 11, the primary purpose of sanctions against counsel is not to compensate the prevailing party, but to "deter future litigation abuse." *In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990) (disallowing award of attorneys' fees which compensated defendants "rather than . . . deter[ring] improper litigation").

*Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) (alterations in original).  Richardson indeed cites to cases in which courts sought to deter parties from pursuing challenges to arbitration awards "without any real legal basis for doing so." *SII Investments, Inc. v. Jenks*, 2006 WL 2092639, *1 (M.D.Fla. 2006).  As articulated by the Fourth Circuit:

> At bottom, a court considering Rule 11 sanctions must differentiate between a losing argument or position, which is not sanctionable, and a frivolous one, which is.  "We have recognized that maintaining a legal position to a court is only sanctionable when, in 'applying a standard of objective

> reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified.'" *Hunter*, 281 F.3d at 153 (quoting *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998)).

*In re Johnson*, 2006 WL 1544430, *3 (4th Cir. 2006).  The purpose of Rule 11 is not to spawn an additional round of litigation in every case, once the merits are resolved.  Here, while the court has found in favor of Richardson, the litigating position of Turner cannot be said to have been sufficiently frivolous.  Accordingly, the Motion for Rule 11 sanctions will be denied.

## V.  Conclusion

For the reasons stated above, Turner's motion to vacate the arbitration award will be denied and Richardson's motion to confirm the award will be granted.  The Motion for Rule 11 Sanctions will be denied.

                         _____/s/_____
                         DEBORAH K. CHASANOW
                         United States District Judge